UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMLET AVETISYAN,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No. 5:26-cv-04988-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Hamlet Avetisyan ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 9.) Respondents answered the Petition ("Answer" at Dkt. 8), and Petitioner replied ("Reply" at Dkt. 10). At the Court's request, both parties also filed supplemental briefing. ("Resp'ts Suppl. Br" at Dkt. 12; "Pet'r Suppl. Br." at Dkt. 13.)

The Petition is granted and Respondents are directed to immediately release

Petitioner from custody. Respondents violated Petitioner's due process rights by (1) detaining him without any pre-deprivation process, (2) based on a pending criminal charge, and (3) without promptly notifying him that he was being detained under § 1226(c), which deprived him of any meaningful post-detention remedy.

## II. BACKGROUND

### A. Entry into the U.S. (September 2022).

Petitioner is a native and citizen of Armenia. (Pet. at 2, ¶ 3.) Petitioner left Armenia "after suffering persecution based on his political beliefs and activities, including being detained and interrogated for participating in a protest against the war in Ukraine." (Pet. at 2, ¶ 3; id. at 7, ¶ 30.)

On September 24, 2022, he presented himself to U.S. immigration authorities at the San Ysidro Port of Entry from Mexico. (Pet. at 7, ¶ 32; Answer Ex. 1 / Dkt. 8-1 at 2 (DHS Form I-213).) DHS processed him and placed him in removal proceedings on that same date. (Pet. at 2, ¶ 4; id. at 8, ¶ 33.) "United States Customs and Border [P]rotection … served [Petitioner] [with] a Notice to Appear, Form I-862, pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ["INA"]," which is codified at 8 U.S.C. § 1182(a)(7)(i)(I). (Answer Ex. A / Dkt. 8-1 at 2 (DHS Form I-213).)

As of the date of this order, those removal proceedings remain pending, and Petitioner has not been ordered removed from the United States. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 241-975-418 (Armenia), last accessed Oct. 19, 2026).

### B. Release from DHS Custody and Asylum Application (December 2022-May 2026).

Petitioner remained in DHS custody between September 24, 2022 and sometime in December 2022, when DHS released him on a $5,000 bond and enrolled him in the Alternatives to Detention ("ATD") Program. (Pet. at 2, ¶ 5; id.

at 8, ¶ 35; Pet. Ex. B / Dkt. 1-2 (notice from DHS to the immigration court notifying them of Petitioner's release from custody); Answer Ex. 1 / Dkt. 8-1 at 2-3 (DHS Form I-213).) His release was the result of a DHS custody determination, not a bond redetermination hearing by an immigration judge ("IJ"). (Pet. at 2, ¶ 5; id. at 8, ¶ 35.)

DHS issued Petitioner an I-94 reflecting Class of Admission "DT" and an admit-until date of September 23, 2023. (Pet. at 2, ¶ 4; id. at 8, ¶ 34; Pet. Ex. A / Dkt. 1-1.)

For the next 3 and a half years, Petitioner continued to live in the U.S. under ICE supervision. (Pet. at 3, ¶ 7; id. at 8, ¶ 36.) According to Petitioner, he "attended all scheduled Immigration Court hearings" and "regularly appeared for his required ICE check-ins." (Pet. at 3, ¶ 6; see also Answer Ex. 1 / Dkt. 8-1 at 3 (DHS Form I-213, memorializing the dates that Petitioner appeared for immigration court hearings, biometric appointments, and ICE check-ins between 2023 and 2026).)

On July 11, 2023, he applied for asylum and withholding of removal. (Pet. at 2-3, ¶ 6; id. at 8, ¶ 37; Answer Ex. 1 / Dkt. 8-1 at 3 (DHS Form I-213).)

On January 19, 2024, USCIS granted him employment authorization to legally work in the U.S. through January 18, 2029. (Answer Ex. 1 / Dkt. 8-1 at 3 (DHS Form I-213).)

On January 17, 2025, DHS issued Petitioner a new Order of Release on Recognizance ("OREC"). (Answer Ex. 2 / Dkt. 8-2.) The OREC required Petitioner to report to ICE in approximately one year, on January 15, 2026. (Id.) As conditions of his release, Petitioner was required, inter alia, not to "violate any local, State or Federal laws or ordinances" or "commit any crimes…." (Id. at 2-3.) The OREC stated, "Any violation of these conditions may result in you being taken into ICE custody and you being criminally prosecuted." (Id. at 3.)

Until March 2026, as discussed further below, Petitioner had no criminal

record. (Pet. at 9, ¶ 40; see also Answer Ex. 1 / Dkt. 8-1 at 3 (DHS Form I-213, section entitled "CRIMINAL HISTORY," listing no other arrests or convictions).)

**C. Arrest for Robbery (March 2026).**

On March 18, 2026, Petitioner was arrested by the Glendale Police Department and charged in L.A. Superior Court with second degree robbery under California Penal Code § 211. (Pet. at 8-9, ¶ 40; Answer Ex. 1 / Dkt. 8-1 at 3 (DHS Form I-213).)

This Court has obtained some records from the L.A. Superior Court regarding this criminal case. Those records are attached to this order (see Order Ex. A), and the Court takes judicial notice of them.[1] See Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record … including documents on file in federal or state courts.").

The criminal complaint contains no facts about the offense other than that Petitioner "did unlawfully, and by mean of force and fear take personal property from the person, possession, and immediate presence of Jesse Omar Diaz." (Order Ex. A at 1.) On March 20, 2026, Petitioner was appointed counsel. (Order Ex. A at 6-7.) He pled not guilty and was released from custody on his own recognizance. (Order Ex. A at 6-7; see also Pet. at 9, ¶ 40.) His preliminary hearing was set for May 20, 2026. (Order Ex. A at 8.)

**D. Detention by ICE (May 19, 2026).**

On May 19, 2026, the day before the preliminary hearing in his criminal

---

[1] The docket is also available online at: People v. Avetisyan, No. 26GDCF00119-01 (L.A. Sup. Ct.), https://www.lacourt.ca.gov/pages/lp/access-a-case/tp/find-case-information/cp/os-criminal-case-access (last accessed Oct. 19, 2026).

case, ICE arrested Petitioner and took him into immigration custody. (Pet. at 3, ¶ 8; id. at 9, ¶ 42.)

DHS issued a document entitled, "Notice – Immigration Bond Cancelled." (Resp'ts Suppl. Br. Ex. B / Dkt. 12-2.) It appears that this was sent to the obligor of the bond, Vladimir Cherenkov; there is no indication on the form that it was served on Petitioner. (Id.) The notice stated, "[ICE] has determined that the conditions of the immigration bond referenced above have been satisfied and the bond is cancelled." (Id.)

Petitioner was served with an administrative arrest warrant, which stated that there was "probable cause to believe that [he] is removable from the United States … based upon ... the pendency of ongoing removal proceedings against" him. (Resp'ts Suppl. Br. Ex. C / Dkt. 12-3 (DHS Form I-200).)

Petitioner was also served with a form entitled "Notice of Custody Determination" which stated that a custody determination had been made "[p]ursuant to the authority contained in section 236 of the [INA] and part 236 of title 8, Code of Federal Regulations…." (Resp'ts Suppl. Br. Ex. D / Dkt. 12-4 (DHS Form I-286).) The form listed options for the officer making the custody determination to indicate the following:

> ___ Detained by [DHS].
>
> ___ Released (check all that apply):
>
> > ___ Under bond in the amount of $ ____
> >
> > ___ On your own recognizance.
> >
> > ___ Under other conditions. (Additional document(s) will be provided.)

(Id.) However, the officer left this section blank, failing to check any of these options. Petitioner signed the form to acknowledge receipt and checked the box stating, "I do request an [IJ] review of this custody determination." (Id.)

**E. <u>Status of State Court Criminal Proceedings.</u>**

Petitioner was unable to appear in L.A. Superior Court on May 20, 2026 due to his detention by ICE. (Pet. at 9-10, ¶ 44.) The Superior Court issued a $50,000 bench warrant for his arrest. (Order Ex. A at 9 (minutes of proceedings on May 20, 2026).)

On July 24, 2026, Petitioner's criminal counsel asked the Superior Court to issue a writ of habeas corpus ad prosequendum, which would have required ICE to produce Petitioner for state court proceedings. (Order Ex. A at 10.) Counsel submitted a supporting affidavit stating that Petitioner was "highly motivated to resolve these pending criminal charges" and that, due to the charges, he was not "eligible for immigration bond at this time." (<u>Id.</u> at 12.) On August 12, 2026, the Superior Court denied the request and noted, "The Bench Warrant issued for [Petitioner] in the sum of $50,000.00 remains in full force and effect." (<u>Id.</u> at 16.)

As a result of his detention by ICE, "Petitioner has been separated from his friends, work and community and has experienced health issues requiring emergency surgery within the detention facility." (Pet. at 3, ¶ 11.) He remains in ICE custody in Adelanto, California. <u>See</u> ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 241-975-418 (Armenia), last accessed Oct. 19, 2026).

**F. <u>Habeas Proceedings.</u>**

**1. Briefing on the Petition.**

Petitioner filed the present Petition on August 28, 2026, raising the following claims:

<u>Ground 1:</u> Petitioner's detention violates his Fifth Amendment right to procedural due process because he was arrested "without prior notice and a neutral pre-deprivation hearing." (Pet. at 15-23, ¶¶ 63-92.)

<u>Ground 2:</u> Petitioner's detention violates his Fifth Amendment right to substantive due process because his detention is not "reasonably related to a

legitimate regulatory purpose." (Id. at 23-25, ¶¶ 93-101.)

Ground 3: Respondents' decision to re-detain him violated the Administrative Procedure Act ("APA") because it was "contrary to constitutional right and taken without observance of procedure required by law…." (Id. at 25-26, ¶ 102.)

The Petition seeks: (a) immediate release from immigration custody "under the conditions governing his release immediately before May 19, 2026"; and (b) an order enjoining Respondents from detaining Petitioner again absent a pre-deprivation hearing at which Respondents bear the burden of establishing by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. (Id. at 26-27.)

Respondents answered the Petition on September 9, 2026. (Dkt. 8.) They argued that Petitioner "appear[ed] to be subject" to mandatory detention under the Laken Riley Act ("LRA"), as codified at 8 U.S.C. § 1226(c)(1)(E), because of his March 2026 arrest and pending charges for robbery. (Id. at 2.) They appeared to argue that Petitioner's robbery charge (or, possibly, all robbery charges) qualified as a "crime that results in death or serious bodily injury to another person" under § 1226(c)(1)(E)(ii). (Id. at 2 (citing and italicizing this portion of the statute).) They argued that, because of this, and because he "has procedural avenues that remain open to him if he wishes to challenge [his] detention," he could not "establish any meritorious substantive due process claim." (Id. at 4-5.) Alternatively, they argued that, "even assuming Petitioner is not subject to mandatory detention," he is lawfully detained under § 1226(a), because he is in pending removal proceedings. (Id. at 3, 5.) They argued, "At most, Petitioner would be entitled to a bond hearing." (Id. at 5.)

Petitioner replied on September 14, 2026. (Dkt. 10.) He argued that the Answer did "not answer the constitutional question presented by the Petition," i.e., whether ICE should have "provid[ed] notice and a meaningful opportunity to be

heard before a neutral decisionmaker" prior to his re-detention by ICE. (Id. at 2.) Petitioner did "not concede that Respondents have correctly applied § 1226(c)(1)(E) to him," but argue that, even if it they had, it did not resolve the constitutional question. (Id. at 2-3.) He argued that the March 2026 arrest for robbery was not "sufficient to justify the immediate extinguishment of [Petitioner's] established liberty," because "the criminal charge remains an allegation" to which "Petitioner pleaded not guilty…." (Id. at 4.)

**2. Supplemental Briefing.**

On September 16, 2026, the Court asked the parties to file supplemental briefs addressing specific questions about (1) how, when, and why Respondents had decided Petitioner was subject to mandatory detention under § 1226(c) and the LRA; (2) how Petitioner was notified of that determination, if at all; (3) if there were any procedures Petitioner could use to challenge that determination; (4) if Respondents were willing to transport Petitioner to state court for his criminal proceedings and, if not, how that affected his constitutional claims. (Dkt. 11.)

Respondents' supplemental brief stated that they were *not* arguing that the March 2026 robbery charge was a crime that "resulted in death or serious bodily injury to another person" under § 1226(c)(1)(E)(ii). (Resp'ts Suppl. Br. at 1.) Instead, they argued the robbery charge fell within the LRA's language about "any burglary, theft, larceny, shoplifting, … regardless of whether death or serious bodily injury is inflected [sic]…." (Id. at 1-2.) As proof that Petitioner was notified of the basis for his detention, Respondents pointed to the bond cancellation form, the administrative arrest warrant, and the custody determination form. (Id. at 2.) They argued that he may challenge the applicability of § 1226(c) to him by requesting a post-detention Joseph hearing before an IJ, and they alleged that he has not yet done so. (Id. at 2.)[2] They argued that they are not required, by Ninth

[2] A Joseph hearing, as discussed further below, is a post-detention hearing contemplated by DHS regulations, at which a noncitizen can challenge whether

Circuit or Supreme Court precedent, "to ensure that a criminal alien be presented for pending criminal proceedings" and "object[ed] to physically transporting Petitioner to L.A. Superior Court…" (Id. at 3.) They indicated their willingness to "accomodat[e] the Petitioner's remote appearance via VTC provided Respondents are given 7 days' notice of the hearing." (Id.)

Petitioner's supplemental brief asserted that he was not informed of his LRA and § 1226(c) classification until Respondents filed the Answer in this case, and he argued that Respondents have not produced any evidence to the contrary. (Pet'r Suppl. Br. at 2-3, 5.) Petitioner argued that robbery does not fall within the provision of § 1226(c) cited by Respondents, because it lists only burglary, theft, larceny, and shoplifting. (Id. at 3.) He pointed out that he *did* request a custody review by an IJ upon his arrest by ICE, as reflected on the Notice of Custody Determination form, but that no hearing was ever scheduled. (Id. at 4.) He argued, "A hearing conducted now cannot become the pre-deprivation hearing he was denied on May 19," the date of his ICE arrest more than five months ago. (Id. at 5.) He argued that, while his due process rights were violated in this case, the Court "need not decide whether § 1226(c)(1)(E) is unconstitutional in every application to resolve this petition." (Id. at 8.)

Petitioner also submitted a declaration from his criminal counsel who, based on his extensive experience practicing in that area and courthouse, outlines the problems with Respondents' proposed remote-appearance-only proposition, opining that "an attempted remote appearance from federal immigration detention would not provide an effective substitute for [Petitioner's] physical appearance and would not permit [his] criminal matter to proceed in the ordinary course." (Dkt. 13-1 at 4, ¶ 10.)

---

they are properly detained under § 1226(c), as opposed to § 1226(a).

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 1, Because Respondents Violated His Due Process Rights.

#### 1. Legal Standard.

a. Due Process.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

b. Statutory Framework.

8 U.S.C. § 1226(a) generally "authorizes the federal government to detain aliens pending the completion of their removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193 (9th Cir. 2022). Detention is not mandatory; the government may either detain the noncitizen or release them on bond or

conditional parole. Id. at 1196 (citing 8 U.S.C. § 1226(a)(1)-(2)).

Section 1226(c), in contrast, "carves out a class of aliens for whom detention is mandatory." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022). Unlike § 1226(a), "§ 1226(c) on its face offers no opportunity for release on bond." Id. (citing Prieto-Romero v. Clark, 534 F.3d 1053, 1066 (9th Cir. 2008)). "Consequently, noncitizens subject to mandatory detention under [§ 1226(c)] are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by" § 1226(c)(4). Avilez v. Garland, 69 F.4th 525, 535-36 (9th Cir. 2023) (overruling Casas-Castrillon v. DHS, 535 F.3d 942 (9th Cir. 2008)).[3]

As the Ninth Circuit has explained, ICE regulations do allow a noncitizen detained under § 1226(c) to request a post-detention hearing before an IJ, to determine whether he is properly classified under that provision:

> An individual detained under § 1226(c) may ask an IJ to reconsider whether the mandatory detention provision applies to him, see 8 C.F.R. § 1003.19(h)(2)(ii), but such review is limited in scope and addresses only whether the individual is properly included in a category of non-citizens subject to mandatory detention based on his

[3] Section 1226(c)(4) provides, "The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." 8 U.S.C. § 1226(c)(4); see also 18 U.S.C. § 3521 ("witness relocation and protection").

> criminal history. See generally In re Joseph, 22 I. & N. Dec. 799 (BIA 1999). At a 'Joseph hearing,' a detainee 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [DHS] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.' Demore, 538 U.S. at 514 n. 3. "A determination in favor of an alien" at a Joseph hearing "does not lead to automatic release," Joseph, 22 I. & N. Dec. at 806, because the government retains discretionary authority to detain the individual under § 1226(a). Instead, such a determination allows the IJ to consider granting bond under the § 1226(a) standards, namely, whether the detainee would pose a danger or flight risk if released.

Rodriguez v. Robbins, 804 F.3d 1060, 1078-79 (9th Cir. 2015), rev'd on other grounds sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the version of § 1226(c) in effect at that time against a due process challenge. The noncitizen "argued that his detention under § 1226(c) violated due process because the INS [now DHS] had made no determination that he posed either a danger to society or a flight risk." Id. at 514. The Supreme Court rejected this argument, reasoning, "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." Id. at 513. The Supreme Court also rejected the noncitizen's argument that due process required "individualized bond hearings," reasoning, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal," and the "evidence Congress had before it certainly supports the approach it selected…." Id. at 528.

Importantly, the Supreme Court noted that: (1) the noncitizen "did not dispute the validity of his prior convictions," which were the basis of his detention under § 1226(c), and that these convictions "were obtained following the full procedural protections our criminal justice system offers"; (2) the noncitizen "did not dispute [the government's] conclusion that he [was] subject to mandatory detention under § 1226(c)"; (3) the noncitizen "conced[ed] that he was deportable" and "forwent" a Joseph hearing"; (4) cited evidence that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 514, 530.

After Demore was decided, Congress passed the LRA, which added subsection (E) to § 1226(c). That subsection provides that a noncitizen is subject to mandatory detention if he or she:

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii). The amended statute also provides, "For purposes of paragraph (1)(E), the terms 'burglary', 'theft', 'larceny', 'shoplifting', 'assault of a law enforcement officer', and 'serious bodily injury' have the meanings given such terms in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2).

**2. Analysis.**

a. Respondents' application of § 1226(c) to Petitioner violated his due process rights as applied on the facts of this case.

The initial Petition in this case argued that Respondents violated Petitioner's procedural due process rights by taking him into immigration custody without a pre-deprivation hearing before a neutral decisionmaker, such as an IJ. (Pet. at 15-23, ¶¶ 63-92.) Consistent with what many district courts around the country have held, Petitioner argued that he had a protected liberty interest arising from ICE's 2022 decision to release him from custody. This Court agrees that "the government's decision to release [Petitioner] create[d] an implicit promise, upon which [he could] rely, that [his] liberty [would] be revoked only if [he] failed to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases).

Respondents appear to be arguing that Petitioner's liberty interest in release lessened or vanished, or that *post*-deprivation procedures are now sufficient to satisfy due process, after Petitioner was arrested on suspicion of robbery in March 2026. At that point, they argue, he became subject to mandatory detention under § 1226(c)(1)(E)(ii).

Even assuming Petitioner is properly subject to mandatory detention under this provision—an issue it is unnecessary for this Court to decide at this stage—Petitioner has shown that Respondents violated his procedural due process rights on the facts of this case.

There is no evidence that Petitioner was ever given notice that he was being held under § 1226(c) until Respondents filed their Answer in this case. None of

the paperwork served on Petitioner when he was arrested on May 19, 2026 indicated that he was being held under § 1226(c). (See Resp'ts Suppl. Br. Exs. B, C, D / Dkt. 12-2, 12-3, 12-4.) Although Respondents now assert that Petitioner could have requested a post-deprivation Joseph hearing, it is unclear how he could have done so when he was never informed of the basis for his detention. The paperwork served on Petitioner does indicate that he requested IJ review of ICE's custody determination (see Dkt. 12-4), and Respondents do not explain why such a hearing was never held. On this record—where Petitioner was not notified of the basis for his detention until nearly 4 months after his arrest, and was only notified at all because he filed a federal habeas petition challenging that detention—the availability of a post-deprivation Joseph hearing is insufficient to protect Petitioner's due process rights.

The record in this case demonstrates why—under the second Mathews factor—the risk of erroneous deprivation is significant absent a pre-deprivation hearing. Even after Respondents belatedly informed Petitioner that he was subject to detention under § 1226(c), when they filed their Answer in September 2026, their rationale for invoking that provision continued to change. The Answer initially argued:

> Under the Laken Riley Act, 8 U.S.C. § 1226(c) was amended to provide that the Attorney General "***shall*** take into custody any alien who…(i) is inadmissible under paragraph 6(A), 6(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, ***or any crime that results in death or serious bodily injury to another person***." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). Here, Petitioner is inadmissible because he was recently arrested for

> robbery in violation of California Penal Code 211, a felony. Ex. A at 3. Accordingly, Petitioner is subject to mandatory detention and is lawfully detained.

(Answer at 2 (emphasis in original).) When the Court asked Respondents to explain why they believed Petitioner's robbery charge was a "crime that results in death or serious bodily injury to another person" (Dkt. 11 at 1-2), Respondents' rationale shifted. They responded:

> [T]he Laken Riley Act applies where a person, as is the case here, "(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of ***any burglary, theft, larceny, shoplifting***…." … Under the statute, any burglary, regardless of whether death or serious bodily injury is inflected [sic], subjects the perpetrator to mandatory detention.

(Resp'ts Suppl. Br. at 1-2 (emphasis in original).) As discussed above, Petitioner has been charged with robbery, not burglary. Respondents appear to be arguing that robbery is equivalent to burglary, but they do not explain why or cite any authority for that proposition. Respondents also do not address whether Petitioner meets the first requirement of § 1226(c)(1)(E)(i), i.e., whether Petitioner "is inadmissible under paragraph 6(A), 6(C), or (7) of section 1182(a) of this title." 8 U.S.C. § 1226(c)(1)(E)(i). (See Answer Ex. A / Dkt. 8-1 at 2 (DHS Form I-213, stating that on September 24, 2022, "United States Customs and Border [P]rotection … served [Petitioner] [with] a Notice to Appear, Form I-862, pursuant to Section 212(a)(7)(A)(i)(I) of the [INA]").)

Requiring the government to hold a pre-deprivation hearing would require DHS to demonstrate why they believe Petitioner is subject to detention under § 1226(c), at a stage of the proceedings when Petitioner has superior access to counsel and evidence about the circumstances of his pending criminal charge.

This type of as-applied due process challenge is not foreclosed by Demore, which considered a facial challenge to § 1226(c). Moreover, after Demore was decided, Congress amended § 1226(c) via the LRA, making it applicable to noncitizens with *pending* criminal charges, not just those with criminal *convictions*. Significantly, the Demore court noted that the noncitizen's convictions had been "obtained following the full procedural protections our criminal justice system offers." 538 U.S. at 513. Here, in contrast, Petitioner's robbery charge remains pending, and he has pled not guilty to that charge. His immigration detention, combined with the government's refusal to transport him to state court to participate in his criminal proceedings, is actively preventing him from defending himself against that charge. This places him in a Catch-22 that virtually guarantees he will remain in immigration custody until his immigration case is resolved. If he could successfully defend himself against the robbery charge, then he would no longer be subject to mandatory immigration detention under § 1226(c). See Osorio v. Albarran, No. 26-cv-08783, 2026 WL 2741855, at *3, 2026 U.S. Dist. LEXIS 210306, at *6-7 (N.D. Cal. Sept. 16, 2026) (collecting cases concluding that the LRA's "mandatory detention requirement does not apply if the noncitizen's criminal charges have been dismissed and the noncitizen is no longer under arrest"); Castellon v. DHS, No. 26-cv-04245-AJR, 2026 WL 2434858, at *3, 2026 U.S. Dist. LEXIS 186607, at *7-8 (C.D. Cal. Aug. 19, 2026) ("The relevant section of the Laken Riley Act that imposes mandatory detention when an alien is in removal proceedings and 'is arrested for' a list of enumerated offenses, including theft, only applies to aliens who are currently in custody facing charges for such offense.").

At present, Petitioner has been detained for 5 months without any removal decision by an IJ—significantly more time than what was contemplated by the Supreme Court in Demore. See 538 U.S. at 530 (noting that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in

which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal”).

The third Mathews factor—the government’s countervailing interest—does not outweigh the other factors on the facts of this case. While the government has an interest in protecting the public from noncitizens who may be criminals, that interest is lessened where, as here, the noncitizen has only been charged with a crime, rather than convicted, and has pled not guilty. There has been no individualized finding that Petitioner is a danger to the public. Indeed, when DHS released him in 2022, they necessarily determined he was not a danger. The state court also determined that Petitioner could be released from custody safely, subject to posting bail and certain conditions (e.g., staying away from the victim). (Order Ex. A at 7 (minutes of bail hearing on March 20, 2026).)

In sum, the Court finds that Respondents violated Petitioner’s due process rights by (1) detaining him without any pre-deprivation process, (2) based on a pending criminal charge, and (3) without promptly notifying him that he was being detained under § 1226(c), which deprived him of any meaningful post-detention remedy. To make matters worse, Respondents refuse to physically transport Petitioner to state court to contest the pending criminal charge, the dismissal of which might also lead to his release from immigration custody. These facts, taken together, demonstrate that Petitioner was deprived of sufficient notice and an opportunity to be heard regarding whether he is properly detained during the pendency of his immigration proceedings.

b. The proper remedy is release from custody, not a post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner’s due process rights. Moreover, allowing the government to “cure” such a violation by providing a post-detention hearing would effectively render any holding that a

pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in similar contexts. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."). In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**B. Grounds 2 and 3 are Dismissed as Moot.**

Granting Ground 1 of the Petition, as described above, grants all of the relief requested therein. Accordingly, the Court declines to reach the other grounds raised in the Petition, which will be dismissed as moot.

//

//

//

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1 of the Petition is granted, and Grounds 2 and 3 are dismissed without prejudice as moot.
2. Respondents shall **immediately release** Hamlet Avetisyan (A# 241-975-418) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that: (a) Petitioner is subject to detention under § 1226(c); or (b) Petitioner is subject to detention under § 1226(a) because (i) he is a flight risk or a danger such that his physical custody is required, or (ii) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[4]

DATED: October 20, 2026

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[4] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).